The first matter to be heard this morning is Ratkiske v. Klemm, and as is the usual procedure, we will have five minutes of uninterrupted argument per side. Ms. Rosenbaum. Thank you. May it please the Court, Adina Rosenbaum on behalf of Appellant Kevin Ratkiske. I would like to reserve ten minutes for rebuttal, which will be conducted by my co-counsel Matthew Weisberg. Mr. Weisberg. This case presents the question whether the FDCPA's statute of limitations begins running regardless of whether the injured consumer knows of his injury, or whether the federal discovery rule delays the start of the statute of limitations until the consumer learns, or reasonably should have learned, of that injury. This Court has long recognized that the discovery rule applies to federal statutes of limitations unless Congress has directed otherwise, and has applied the discovery rule to a wide variety of statutes of limitations, including those that, like the FDCPA's statute of limitations, start at a date from a statutory violation, such as the statutes of limitations in Title VII and the ADEA. In determining whether the discovery rule applies, this Court uses a two-pronged test derived from TRW v. Andrews. First, it looks at whether Congress has either expressly or implicitly directed that the discovery rule would not apply. If Congress has not directed otherwise, it applies the discovery rule. Here, the FDCPA's text does not expressly state that the discovery rule should not apply, nor does the FDCPA implicitly demonstrate an intent to foreclose application of the discovery rule. And accordingly, under this Court's established test, the discovery rule should apply to the FDCPA. In arguing otherwise, defendants rely largely on TRW, so I want to spend a few minutes discussing that case in detail. Although defendants argue that TRW controls here, TRW's holding was based on the specific language and structure of the statute of limitations in front of it, and the FDCPA does not contain the relevant structure or language. TRW held that the discovery rule did not apply to a statute of limitations in the Fair Credit Reporting Act, FCRA, that contained two limitations periods. It contained a general limitations period that dated from when the liability arose, and then it contained an exception for certain misrepresentation cases that dated from the discovery of the misrepresentation. And the Court concluded that this structure evinced congressional intent not to apply the discovery rule as a general matter. It determined that by expressly stating that the discovery rule applied in certain limited cases, Congress had implicitly excluded applying it as a general matter to all cases. And it pointed out that if the discovery rule were applied as a general matter to all cases, the provision providing that it applied in certain limited cases would be effectively superfluous. In contrast to the statute of limitations at issue in TRW, the FDCPA's statute of limitations does not contain a limited discovery rule or any other indication that Congress implicitly foreclosed the discovery rule's application to the statute of limitations. I want to respond to three specific arguments that defendants make in their briefs about TRW. First, the defendants rely heavily on the concurrence in TRW and repeatedly cite the concurrence's discussion of Bay Area Laundry, but they ignore the part of the majority decision that criticized the concurrence and accused it of ripping Bay Area Laundry off its berth. This is footnote 6 of the majority decision. The majority continued by saying that it was going to set the record straight and clarifying that in fact the only question answered by Bay Area Laundry was whether a statute of limitations could commence on one day when the right to sue ripened on a later day. That question is not presented here. Second, TRW does not contradict the proposition that the discovery rule applies unless Congress has directed otherwise, as can be seen in the fact that this court has reiterated again and again in the years since TRW that unless Congress has directed otherwise, the discovery rule applies. Indeed, the Supreme Court in TRW specifically stated that that case did not oblige it to decide whether there is a presumption in favor of the discovery rule or not. Rather, what TRW rejected was the Ninth Circuit's position that the only way Congress could express an intent to foreclose the discovery rule was through express language. It concluded that Congress could also implicitly express such an intent. Here, because Congress has neither expressly nor implicitly expressed an intent to foreclose the discovery rule, that part of TRW is not relevant. Third, TRW did not hold that it was inappropriate to apply the discovery rule to a consumer credit protection statute. It held that the discovery rule did not apply to the Fair Credit Reporting Act's statute of limitations because of that provision's specific structure and language. And again, the FDCPA does not contain the relevant language or structure that were dispositive in TRW. Ms. Rosenbaum, in TRW, the opinion offered by Justice Ginsburg noted that the Supreme Court has recognized general discovery rules in two contexts, latent disease and medical malpractice, where the cry for such a rule is loudest. Now, the court in TRW, as you noted, was dealing with the FCRA. It does not govern an area of the law that cries out for the application of a discovery rule. In Justice Ginsburg's words, do you contend that the statute at issue here, the FDCPA, governs an area of the law that cries out the application of the discovery rule? And I ask you that with this hypothetical because as I look at the FCRA, it seems to cry out more for a discovery rule than the FDCPA because of the very nature of the wrongs that that statute seeks to regulate, items placed in credit reports that are almost always not subject to general view that would be unknown to people. I have two responses to that. First, I don't think in that section of TRW that the court was saying that the discovery rule only applies in cases that are found to cry out the most for the discovery rule. I think what the court was saying in TRW was that that was not a case where the need for the discovery rule was going to outweigh what it found was an implicit expression of congressional intent not to apply the discovery rule. So any need for it there was not going to outweigh Congress having made clear in that case through the inclusion of the limited discovery rule that it did not intend the discovery rule to apply to the statute of limitations that was at issue. In terms of the need for discovery rule in this case, I think the facts of this case really show how the discovery rule is necessary for FDCPA and how violations of the FDCPA can remain hidden for many years. This is a situation where the defendants filed a debt collection lawsuit against Mr. Watkiski and didn't serve him. They instead served a stranger at an address where he didn't live. And because of the inherently self-concealing nature of what they did, of their behavior Does that affect the accrual of the cause of action or does it in effect toll the limitations period? Or does it make any difference to you? I don't think it makes any difference whether the discovery rule is viewed in terms of accrual or tolling. Whichever way it operates, it postpones the start of the statute of limitations until the plaintiff learns or reasonably should have learned of his injury. So whether it's called a delay in the accrual of the statute of limitations. In this case, the words, if violation occurs, isn't that really an explicit statement of when the clock starts to tick? No, that language doesn't say anything about whether in cases in which the injured party doesn't know of his injury or have any reason to know of his injury. Whether in those cases the discovery rule then operates to postpone the statute of limitations until he learns of his injury. That's not what we said in Cunningham. Go ahead, Judge. That's not what we said in Cunningham. I'm going to quote Cunningham. We know in that, or stated in that case, that the discovery rule is not apt for RESPA claims because Congress specifically provided that the limitations period begins to run on, quote, the date of the occurrence of the violation. Did I write Cunningham? Yes. It's got to be wrong. I was thinking it said Cunningham. We're not taking a vote on that. Continue, Judge. So the date of the occurrence of the violation, I assume you agree that language is remarkably similar to the language at issue here, which says the date on which the violation occurs. The discovery rule wasn't the question at issue in Cunningham. What was at issue there was equitable tolling, and the court held that that equitable tolling applied to RESPA. Right, and we could apply equitable tolling here if it hadn't been waived, right? So your client's not without a remedy, and the discovery rule is different than equitable tolling, is it not? Well, this court has keyed the discovery rule to whether the plaintiff knows of his injury and keyed equitable tolling to knowing about other facts. We do think that if the discovery rule didn't apply here to FDCPA cases, that equitable tolling would apply also. But we don't think that equitable tolling is necessary here because the discovery rule should operate to postpone the statute of limitations until... You're equating equitable tolling and the discovery rule? I'm sorry? You are equating equitable tolling with the discovery rule? The discovery rule postpones the statute of limitations until the injured person learns of his injury. And this court has sometimes separated or distinguished between them by saying that the discovery rule is about whether the plaintiff knows of his injury, whereas equitable tolling is about you assume he knows of his injury, and it's about whether he knows about other facts related to the cause of action. It requires some kind of affirmative conduct or some kind of concealment, some kind of dirty hands, if you will, on the part of the defendant. That is not there with the discovery rule. It may be there, but it's not necessarily there. It is necessary to equitable tolling. It's certainly not necessary for the discovery rule for there to be dirty hands or... Judge Green, I think you had a question. I think you had a question. I did. Thank you so much. So I'd like to go back to explicit command. Is it your view that when the language explicit command is used, that that refers specifically to a yea or nay on the invocation of the discovery rule, or can we look to the language violation occurs and say that represents an explicit command? I think an explicit command would be yea or nay on the discovery rule, but obviously that's not the end of the inquiry. The court also looks at whether there's something implicit in the language or structure that would foreclose the discovery rule. But to get back to the specific language... Actually, I want to take it a step further. If that's how you define explicit command, then when you look at text structure or policy considerations, where does the notion that violation occurs go in that analysis? And what should we infer from that? I don't think there's anything to be inferred from the specific language here in terms of application of the discovery rule. The language violation occurs is silent on whether, in those instances in which the injury remains hidden for some reason, whether the discovery rule applies. And, in fact, this court has repeatedly applied the discovery rule to statutes of limitations dating from the occurrence of a statutory violation. Ms. Roosevelt? My problem with that argument is that it rests on one case that predates TRW and one case that postdates TRW but never mentions it, and the briefs never cited TRW, and it's dictum because that case was time-barred even under the discovery rule. So is there any case that applies TRW that has reasoning that finds a discovery rule with violation-occurs language? Well, this court has continued to rely on O'Shiver, the case that predates TRW, and continues to cite that as good law in cases post-TRW. And predominant doesn't cite TRW, but it does recognize post-TRW that the discovery rule applies to cases dating from a statutory occurrence. And I think that, fundamentally, TRW is not relevant to the analysis in Podolnik. But TRW said that if the language had been amended, as the legislative history suggested, to have the violation-occurs language, that that would have plainly established the absence of a discovery rule. I think TRW in that section isn't, it's certainly not holding that the language, violation-occurs would establish, or would show an intent not to apply a discovery rule. I think in that section it's really paraphrasing the argument of the plaintiffs. The plaintiffs in that case had stated that that language would show an intent not to apply the discovery rule. And the Supreme Court, in rejecting the plaintiffs' argument about the legislative history and the language in the legislative history, paraphrases the plaintiffs' argument. Actually, the Supreme Court said that that language unambiguously invoked the occurrence rule. It couldn't be much clearer than that. And they compared, there are a lot of similarities between the two statutes. But the actual language on the statute of limitations between the FCRA and the FDCPA is different. And when they posited that that different language, which was in the prior printer's number, the Court said clearly that that was unambiguous and that it denoted the occurrence rule. I don't know how you get around that argument. I don't think the Court there was actually saying that that unambiguously adopted the occurrence rule. I think it was paraphrasing the plaintiffs' argument in that case, that the plaintiffs were arguing that that adopted the... No, they actually rejected the plaintiffs' argument. And I think what they're really saying is... They accepted the plaintiffs' argument on that prior language in the PCRA. I don't think it was necessary to the point that they were making, which was rejecting that legislative history and language that had not been adopted had any impact on the language before them. Can you come to grips, please, with Judge O'Scanlan's concurrence in Manham? You said that there's nothing about the violation occurs language that should impact our decision here, but that is the central point of the argument, right? And he says that that is clear language that doesn't bear on anybody's knowledge. It just bears on historical fact. Did it happen or not? This is one of those tree falls in the forest things. It doesn't matter if nobody heard it. It fell. The violation occurred. And that's clear language. Go ahead and take that head-on, please. Well, I think that that language doesn't speak to whether the background principle of the discovery rule then applies to postpone the start of the statute of limitations. Why not? That's his point. He says it does do that. He says they could pick all kinds of language, but when you say violation occurs, that's something that happens independent of anybody's knowledge. And if Congress picks that language, it picks it because it intends to say it doesn't matter whether people know it or not. What's wrong with that reasoning? I think that's true also of accrual language, that whether a cause of action accrues happens... That's not what it says. That's not what it says, and that's not what the statute says. And I don't want to stop on the issue of Judge O'Scanlan's question, but I have the same problem. The courts have said, and we at times have misquoted what was said in TRW, but the Supreme Court has said that Congress can express and can explicitly state a date, or can state a date either explicitly or by structure or text. Here you've got a statute that says that the action may be brought within one year from the date on which the violation occurs, not the date on which someone heard the tree fall, but the date on which it fell. Why isn't that an explicit statement of the time that Congress intended to practice that law? Because background principles and tolling principles still operate against the language... Where are you getting this from? Where are you getting this from? Well, partially... Forget equitable tolling. We're not talking about equitable tolling. Again, waive that. So where are you getting that from? Why isn't that an explicit statement? And where is there a case that says even when there's an explicit command from the part of Congress, we can ignore that if there are background principles except for equitable tolling? Let's look just at the discovery rule. Where are you getting that from? Again, this Court has repeatedly applied the discovery rule to statutes of limitations that contain very similar language to the FDCPA's statute of limitations. By use of a statement referring to page 27 of the Supreme Court opinion in TRW, the language you quote doesn't appear anywhere on page 27 and 28. It seems that there's been a misquoting which has then crept into disabled language after that. What the Supreme Court has said is that the Congress can explicitly state you wouldn't disagree with that, explicitly dictate a starting date for the statute of limitations by explicit language, but it seems like it's done here, or by structure or text. And I'm trying to find out how we get around that. Right. So this Court has specifically applied the discovery rule to text that dates the statute of limitations from an occurrence of a statutory violation. So this Court has recognized that this language does not... Name one case. Which case are you hanging your hat on? O'Scheiber is one of them that relates to Title VII. Is that a case that discusses the discovery rule and the timing of the discovery rule as opposed to an interpretation of the current language? Yes, it discusses... Is that a different proposition? Well, it discusses the discovery rule... Excuse me. I want to make sure Judge Jordan had an opportunity to get an answer to his question. It's fine. I'm satisfied. All right. But also to get back... For a question... I'm sorry. I'm finished. Yeah, thank you. Here's a question I have. Is Gram 2's conclusion... We've been talking about Gram 1. Let's shift to Gram 2 for a moment. Is Gram 2's conclusion that the discovery rule is a tolling rule and not a rule of accrual in conflict with TRW and Gabelli? I don't think so. As Gram 2 pointed out, for statute of limitations purposes and when the running of the statute of limitations begins, it doesn't matter whether it's referred to as a tolling rule or an accrual rule. Either way, it delays the start of the statute of limitations. Ms. Rosenbaum, your time is up. Let me ask. Did you reserve five or ten minutes? We reserved ten minutes for a while. That's what I thought. All right. Thank you very much. Thank you. Help me with your name, please, sir, rather than my start-at by butchering it and embarrassing myself. Of course, about 95% of people butcher it so you would not be in the minority. Carl Zapfe. All right, Mr. Zapfe. Thank you. Good morning. Good morning, everyone. May it please the Court, it's an honor to be here. I think at the outset it's important to remind everyone that the point of statute of limitation is not technical. The Supreme Court has held that they serve a very important purpose of preventing prosecution of stale claims and they also noted that their wrong respect of it is fundamental to a well-ordered judicial system. In this specific case, the defendant's position is that the analysis starts and begins with the TRW case, which we discussed at length in both of our briefs and which has already been discussed this morning. Unlike plaintiff, defendants are of the position that the TRW does directly decide this case and is directly on point. It deals with the FCRA, as we discussed, and while the Court has several reasons for its decision, the bottom line is that it did state that a consumer protection statute, a consumer credit protection statute, is not an area of law that cries out for application of the discovery rule. I would submit to this Court that the FDCPA and FCRA cover extremely similar grounds and therefore the TRW decision is directly on point with the matter at hand. Of course, there's the Scalia occurrence, which we discussed at length in our briefs. I won't repeat it here, but point being is that our position is that what is in the concurrence, while maybe more strongly worded in the majority, is the actual fact in the sense that the Supreme Court has only in its history set aside exceptions for very few scenarios, the most prominent of which is latent medical injuries and medical malpractice cases. So from there, if the Court is inclined to disagree with the assertion that TRW basically decides this case, we come to Graham, or Graham 1, the Third Circuit opinion in 2009, which interpreted TRW to say that the analysis begins by looking at the statute and deciding whether Congress has specified an accrual date either by explicit command or by implication from the structure and text of the statute. Previously, a lot of decisions have been deciding this issue on simply the explicit command portion of that clause, whereas TRW determined that that's not correct. You have to look at the language of the statute both explicitly and then also by implication from the structure and text. Graham 1 was very interesting because it distinguished between the civil and criminal portions of the Copyright Act and noted the discrepancy of the language of each of those two statute of limitations. Specifically, the civil limitations period used the accrual language, whereas the criminal limitations period used a rose, which is more closely modeled after the FDCPA language. That was a key component of the Court's decision in Graham. It went so far as to say that it would have plainly established a decision to the contrary if we were talking about the criminal statute. Getting back to TRW for a moment, TRW also had a section, admittedly in dicta, but an important section nonetheless, where it talked about the plaintiffs that argued a deleted portion of the FCRA. This language of the statute of limitations that was ultimately not enacted by Congress was very similar to the FDCPA's current language that was enacted. The Supreme Court looked at that and it said that if the FCRA had been worded like the FDCPA is, in other words, if it used the occurrence of the violation language instead of from the date in which the liability arises, that would have plainly established a prohibition against the discovery rule. So our position is that both Graham 1 and TRW essentially decide this case for us and the opinions can only be read to support the defendant's position in this regard. Finally, we had already talked about Cunningham earlier  with the matter at hand. Again, that was a rest of the claim, and the court said that because Congress specifically provided that the limitations period begins to run on the date of the occurrence of the violation, that essentially decides the issue. The plaintiff had cited Osherberg. She cites it extensively in her supplemental brief and it was discussed here this morning. Our position to that is that, quite simply, it was prior to the TRW case. I think that we can all acknowledge that TRW has changed the landscape of this issue and it would be our position that Osherberg no longer applies to the matter at hand because the law has simply shifted into a different direction since it was issued back in 1994. I have 15 seconds left of unelected time. We don't usually get invitations like that, so I'm going to accept it. You said TRW changed the landscape and indeed it has, but we need to know how much and just how applicable, if at all, it is to the case before us. As we all know, TRW applied to the FCRA and the FCRA includes a provision that sets out a specific exception, the material and willful misrepresentations exception, and that exception, of course, led the court in Justice Ginsburg's opinion to conclude that a general discovery rule couldn't be inferred because if they did that, it would read the exception completely out of the statute. So my bottom line question is, doesn't that reasoning, doesn't the existence of that exception and doesn't the manner in which the Supreme Court handled that exception really make TRW of limited value to us here? I would disagree because, first of all, the FDCPA statute, if you forget about the exception in the FCRA for the moment, we really tend to just simply word it more strongly than the FCRA statute is because it's just so much more concrete from the day on which the violation occurs. Getting to your question, in either case, Congress has had decades to go back and revise these statutes, and I would submit to the court that it's no more stronger than in the FCRA's case when it goes back and adds a limited exception as it is in the FDCPA's case where it doesn't go back at all. Indeed, the statute of limitations section in the FDCPA was recently modified, I believe as recently as 6 or 7 years ago, but they left the actual wording of the statute of limitations of subsection D completely intact. So we would submit that adding an exception, a discovery exception to the FCRA, is no more stronger language than going back, reviewing the FDCPA 1692K, and not changing it at all. There are about ‑‑ I'm so sorry. Brooks, you go. There are about six instances in the FDCPA of prescribed conduct that sound in fraud, you know, representing falsehood that a consumer has committed a crime, et cetera. So I'm trying to discern your position. In those instances, is it your position that those individuals would be left without a remedy? Because if we go from violation occurs, they're unaware of it for a year, they're essentially out of luck because if the argument is equitable tolling may apply, equitable tolling requires that they show that they were actively misled, and we know the FDCPA is a strict liability statute, and that would change the nature of the action. So help me, I'm a person who falls within one of these six categories. I don't learn it for a year. How do I vindicate my rights? Well, first of all, as you said, any such consumer, I believe, would have a potential equitable tolling argument, which, of course, was argued in this case below. Help me. How am I going to articulate that if this is a strict liability statute and I would now have to prove I have an added burden that other people under the FDCPA don't have, right? If you did not find out about it? Right. I now have to take on the burden of showing I was actively misled. Well, not to answer a question with a question, but if you file suit after any statute of limitations is expired, don't you then have an extra burden anyway? I mean, isn't that an extra step in the process that you have to show why somehow your specification should fall into the parameters? I would say that's why we need the discovery rule. Right. Because that is an unfair burden. Well, to a certain extent, you go back to congressional attempt. Obviously, when Congress, I mean, starting at the beginning, obviously when Congress enacted the FDCPA, they chose one year for a reason. And the downside of the statute of limitations, of course, is that it cuts off everyone else who comes along afterwards, but that's part of the give-and-take process of enacting any statute, is that you choose. I'm so sorry. No. Isn't that the purpose, though, of looking at congressional intent? Congress intended for the people who were wronged as the prescribed conduct specifies to have a remedy, right, to be able to seek relief. And doesn't this construct that you're suggesting cut that off? I don't think so because I think this, again, goes back to congressional intent. If Congress wanted to incorporate some sort of discovery rule within the FDCPA, I submit it would have chosen different language. It would not have enacted a statute that says one year or any amount of time from the date on which the violation occurs. It would have used alternate language, such as perhaps when the cause of action accrues, something that is more befitting or more indicative of a congressional intent to the consumer actually finding out about the violation or having a state of mind that is made aware of the violation, as opposed to the cut-and-black language that they ultimately did use, that it's our position that just clearly cuts off anyone after that one-year time. Now, that might be unfair, but. . . Does structure and purpose of the statute have no impact here at all? Because what you're saying is that violation-occurs language is so clear that even if everything else about the statute were, to use Justice Ginsburg's line, crying out for something in the way of a discovery rule, it doesn't matter because violation-occurs carries today. Does structure and purpose of the statute have no bearing on this? It's our position that the structure and purpose comes into play if there's an ambiguity within any given part of the statute. And it's our position that this specific sentence does not contain any ambiguity whatsoever. Suppose you had violation-occurs language and the prescribed conduct. . . You mean accrual? No. Violation-occurs. Okay. Is that what we're. . . It currently says one-year from the date on which the violation occurs. Right. Right. That's what I just said. I'm sorry. In violation. . . I thought you. . . It's all right. We're all right. Violation-occurs. Right. That's in my hypothetical. Sure. But the conduct prescribed is entirely fraud. Okay? Okay. Right. So how would then we look at violation-occurs as it relates to the conduct that Congress wants to remedy? In this hypothetical, if you have a situation that is undoubtedly fraud, the TRW decision does allow an exception for that. We've been focusing on the fact that it talks about the latent medical injuries, but both the concurrence and the majority opinion do acknowledge that there is a historical exception for cases of fraud. Why doesn't that apply categorically to the FDCPA in that this is in contrast to the FCRA, which was dealing with privacy violations and those disclosures? The FDCPA is focused on deceptive and misleading practices. Why don't those sound in fraud and make the statute akin to a fraud statute, per se? I think that that would. . . I would characterize that as perhaps an unfair extension of TRW. I don't think you could look at the FDCPA as a whole and say, because it was enacted to prevent abuses committed by debt collectors over the years, that the entire statute sounds in fraud. I think that the TRW fraud exception is specific to cases where there's an active event of concealment that would prevent someone from finding out about the statute of limitations. Now, the plaintiffs have somewhat hinted that that might be existent here. We categorically deny that because, A, the alleged violation is a judgment, which is a public record. You cannot get any farther away from a concealment than that. And, B, the fact of the matter is that regardless of whether the plaintiff did or did not live at the address where he was purportedly served, the defendants had an affidavit of service from the process server saying service is good. It wasn't a nail-in-the-mill, it wasn't sewer service, there's no allegations anywhere along those lines. He served an individual who represented that he was the head of the household. Now, if we were talking about a different situation where perhaps the affidavit of service didn't come back like that, and perhaps it said, could not effectuate service, and then the defendants went ahead and got a judgment anyway, that might be a situation that perhaps might fall under the TRW exception. I would still argue otherwise by the very nature that it's a judgment itself, and therefore, by its very essence, it cannot be concealed. But just for purposes of example, that would be a situation where it could at least be arguable that that would be covered by the TRW fraud exception. But when you have a situation where a law office files suit against someone, gets an affidavit of service back from a process server that affirms under oath service is properly effectuated, and then proceeds with the litigation action, I don't see how on earth that could sound in fraud. Are you suggesting that with the FDCPA claims that there needs to be a case-by-case determination on the facts of whether the conducted issue sounds in fraud? If it does, you could reach the discovery rule. Not under the FDCPA. I'm actually making a more general point that given my personal reading of TRW and the language in it that refers to the fraud exception, I believe that anyone trying to file suit after a statute has expired would have the option of enacting the discovery rule if there was a fraud in that case. By no means stipulating there was one in this case. To answer your question on a very general level, I do believe that TRW is not a fraud exception. What if there's self-concealing misconduct? I'm sorry? What if there's self-concealing misconduct? In other words, you do something, you may have thought that there was proper service here. It turns out that it wasn't on the correct person, and so the plaintiff here doesn't know about it. And you later find out, and you say, heck with it, I'm not going to do anything about it. I'm just going to keep going. I think in that situation, again, you still have the concealment issue because the ultimate quote-unquote violation here is the judgment itself, which I don't believe can be concealed because of its very essence as a public record. But you don't know that the judge, nobody's attempted in this case, for example, to execute on the judgment, so several years later you go for a credit report and you find out, whoa, there's a default judgment against me. No one told me. I still believe, and certainly one of the elements of common law fraud, is that you need knowledge. Now, in this case, there was quite simply no knowledge. They simply got the affidavit of service back from the process server, and it said that there was good service. Even to this date, there's not knowledge because we never engage in any discovery in this matter, so we don't know for sure whether he did it or not. So what recourse does a plaintiff have here? Is it back to what you said at the outset, maybe it's equitable tolling or what? Well, that, I mean, in terms of the damages themselves, one of his options that he has not undertaken in this case is that he could have moved to vacate the judgment. I mean, after all, an FDC case, we're only talking about statutory damages of $1,000. In terms of how he's been damaged himself, in terms of actual damages, of course any consumer has the right to go back and vacate the judgment. And, of course, if you legitimately weren't served, then I would think that would be a pretty good argument. So that and, of course, equitable tolling would be other options for him as well, too. Does our recognition at KMARC that this is a statute that has important remedial purposes and should be broadly construed have anything to do with your argument? We stipulate that it's a remedial statute and should be broadly construed, but we're not going to argue that. But I think that only comes into play if there's some sort of ambiguity in the specific portion of the statute you're interpreting, and we just don't believe there's any ambiguity here. So I just want to understand your position. If the statute has the limitations period begin running for when the cause of action first accrues, you interpret that to be contrary to an explicit congressional directive that the discovery rule not apply, but if the statute says the limitations period begins to run from when the violation occurred, that's an explicit directive that the discovery rule does not apply? Correct. Now, if this were a situation... What's the difference between accrues and occurred? Well, technically, if it uses the word accrues, one could argue that it doesn't technically accrue until the consumer has knowledge of it. I mean, for example, taking hypothetically a tort claim, one of the elements is typically the consumer has been damaged. So until you get to that prong of a tort, there's been no accrual of the cause of action. So you could argue that the word accrues necessarily incorporates the plaintiff's knowledge of the actual violation, but when the statute is working... That's a surprising position to take because I would have thought that the tort example you're giving is exactly why accrual and occurs are not different because the damage occurs to the plaintiff, whether this plaintiff knows it or not. The fact that it's concealed doesn't mean that the plaintiff hasn't been hurt. It just means that the plaintiff doesn't know it yet. How does it further your position to make a distinction between accrual and occurs? Well, I'm in part interpreting the decisions I've read in preparation for this. I mean, this is a distinction that goes back, as far as I recall, to the late 40s and early 50s, where some enacted statutes use accrual language, other statutes use occurrence language. So, Counselor. Yes. To rephrase that point, are you saying that because the Supreme Court in Urey v. Thompson, 1949, interpreted accrual language, that statute passed after that might be incorporating the Supreme Court's interpretation of accrual, but the Supreme Court hasn't said that clearly about violation-occurs language? Well, our position is that accrual is just, quote-unquote, softer language, basically. That the language of the FDCPA, where it says one year from the date on which the violation occurs, is a hard and fast language that could not be any more succinct, direct, explicit about what Congress intended. Our position is that if a statute used, quote-unquote, softer language, such as from the date on which the violation occurs, then you might have an argument for the discovery rule. I'm not saying that the discovery rule would apply. I'm saying that it would be a stronger argument. Then doesn't it matter whether the discovery rule changes the date of accrual or it's properly viewed as a tolling doctrine? I'm sorry? Doesn't it then matter, for purposes of this argument, whether we view the discovery rule as going to the accrual date or going to a tolling doctrine? Because if it's viewed as a tolling doctrine, that's to say that we're accepting that the accrual date and the violation date are always one and the same. And if that's so, why don't we then superimpose the Supreme Court's reading of some ambiguity in the accrual language in TRW right on to when a violation occurs, if the discovery rule is in fact a tolling rule, rather than changing the date of accrual? I don't consider the discovery rule a tolling language. In fact, by your question, I'm a little worried that perhaps maybe I misspoke earlier. Given your hypothetical, we wouldn't consider the occurrence date to be the same as the accrual date. When I was answering your question before, we would submit that the occurrence date is the date on which the violation occurred, actually occurred, literally occurred. The accrual date, depending on the wording of whatever hypothetical statute we're discussing, may or may not be the date on which the consumer finds out about the violation. Didn't we answer that in Gram 2? When Warren thought about Gram 2, the issue came up in terms of when interest begins to quote accrue, but we discussed the accrual concept in terms of the discovery rule as well. Didn't we answer that? My only recollection of Gram 2 at this moment was that it dealt with language that used the accrual language, excuse me, a statute that used the accrual language and not the occurrence language. So our position was that that was not necessarily on point. Didn't we say there that the discovery rule is a tolling rule? It's not an accrual rule. That's actually saying, you know, now whether that's consistent with the Gabelli or not, I guess, is another question. But at least by our court's precedent, we've said that the discovery rule bears on tolling and not on accrual, haven't we? It sounds like you're remembering Gram 2 better than I am. I don't remember that specific holding of Gram 2. We're looking at it. I'm assuming you're correct. We ruled that the accrual, close quote, of a cause of action occurs at the moment at which each of its component elements has come into being as a matter of objective reality such that an attorney with knowledge of all the facts could get it passed in motion to dismiss for failure to state a claim. And then Glantz goes on to discuss the discovery rule in that concept and said the discovery rule then operates in applicable cases to toll the running of the statute of limitations created. And then we talked about the prejudice of interest, which is the context in which the question arose. And your first portion of that was the accrual language of what you wrote? We ruled that the accrual of a cause of action occurs at the moment at which each of the component elements come into being such that if an attorney knew that those things had come into being, heard the tree fall, the person would be able to get past the motion to dismiss. Yeah, I mean, again, our position, that would be just interpreting a different type of wording of a different type of statute, one that uses accrual and not the occurrence language that's at issue here. Let me ask you about 12b-6. This case was dismissed in 12b-6, correct? Sure. Would it have been appropriate to take some discovery to determine whether there was any fraud or concealment in the service process? Quite frankly, our position is no because the complaint doesn't allege it. I mean, a fair reading of the complaint couldn't be read as some deception in the service process. I really don't think so, and let me try to give you a more expansive answer. The complaint alleges that the defendant was served, and then the initial case was dismissed without prejudice, and then the defendant was served again. Now, regardless of what happened with the second lawsuit At an address where he no longer lived, right? Correct. They stipulate that he lived there at one point, but they're alleging that he was no longer at that address. He would have not known about that service. If his allegations are correct, then that is true, which of course gets us back to why we're here, the discovery rule. But again, our position is that even just looking at the facts of the complaint, given their most liberal interpretation, it's not alleging any type of fraud. It's not saying that there was some sort of bad service and the defendants moved for a default judgment anyway. There's no dispute that he was served the second time in terms of what was on the affidavit of service from the process server. Now, maybe that was incorrect. Maybe he wasn't actually served. But the key component of any allegation of fraud is whether or not there was knowledge on behalf of the defendants, and that is not disputed in the complaint that they got a good affidavit of service. So, put simply, how are they supposed to know he might not have lived there anymore? Now, maybe that was correct. Maybe it wasn't. Maybe the plaintiff's being truthful. Maybe he's not. But the fact of the matter is that when you have a good affidavit of service that's not denied, that couldn't be considered a case of fraud. And then on top of that, it's important to also keep in mind that legal conclusions for purposes of a motion to dismiss that are contained in a complaint must be disregarded. He has one paragraph in there, I think paragraph number 14 of the First Amendment complaint, but we characterize these as simple legal conclusions. So, it's your position that if a debt collector engages in non-fraudulent, yet validative conduct, and it goes on and the collection happens, he can or she can remain without any kind of consequence so long as the plaintiff doesn't find out. Is that your position? To a certain extent, yes. For better or worse, that's the nature of a statute of limitations. I mean, it does operate to cut off claims, and sometimes it's fair and sometimes it's not. How does that actualize the purpose of the statute? I heard what you said about you think violation occurs as clear and unambiguous, but how can we ignore the structure and purpose of this remedial statute that is aimed at ensuring bad debt collection practices don't happen and those who engage in proper debt collection practices are not put at a competitive disadvantage? Let me give you an anecdotal answer, and I apologize for giving you an anecdotal answer, but I think and hope you'll still find it acceptable. For better or worse, I think that the fact pattern of this specific case was a complete anomaly. Debt collectors obviously make money by trying to collect debts, and when you get a judgment against someone, you go after that judgment. I have no idea why that didn't happen here. I have no idea why the case sat around for years and years and years, and we got to this point five, six years later after the judgment was entered. But to answer your question, our position in this matter doesn't necessarily conflict with the purpose of the enactment of the FDCPA because the fact pattern here was so mind-bogglingly rare that it's just not something that would happen with any regular basis. It's kind of ironic because in a way the plaintiff was almost prejudiced by the fact that there were no collection efforts, but that typically doesn't happen because you get a judgment. Your job as a collector is to go out and try to get the money and not just sit on it. So I don't know why that happened here. I have a feeling it was just something fell through the cracks at some point, but I don't think our position is in conflict with that broad remedial purpose just because what happened here was so quirky that it's kind of one of those one-in-a-million type cases. So I hope that makes you at least feel a little better about it. Very deep in your brief is a – I don't know if it's even an argument. It's just a point. There's a suggestion that the FDCPA's statute of limitations is jurisdictional. Is that your position? For purposes of this, yes. We stipulate that there's a circuit split, if I remember correctly, on that issue, and that's probably why it was one of the later sections of our brief because we feel as if the arguments that came before it are, quite frankly, more relevant to the situation. But for purposes of this motion, yes, we're submitting that it is jurisdictional, by the same token acknowledging that it's not as clear-cut as some of the other issues because the cases simply go both ways. Senator, thank you very much. Appreciate your argument. We'll call on Mr. Weisberg for rebuttal. Thank you very much. It's a pleasure to be here today. Thank you, sir. Thank you. Proceed. Thank you. If I may please the court, my name is Matthew Weisberg. I represent the plaintiff appellant, as I did below. I want to use my rebuttal time to answer what I believe to be some not totally answered questions by members of this. In one moment. How about this? What do you think? Here we are. Was that an anxious speech? That's what happens when you're with 13 really smart people. Anyway, here's my question for you. What do we make of TRW's language when it talks about if the wording applied to the FDCPA, it would have plainly established the prohibition against the discovery rule? That's a quote from plainly established is a quote from TRW. What do you make of that? I believe in TRW, and I frankly believe that this court's analysis may begin and end on TRW's distinguishment, which is that TRW recognized the statute, the FCRA, which had itself embedded tolling language, whereas the FDCPA does not. And I think, for example, in Stevens it talks about a clear congressional intent to preclude the discovery rule or otherwise tolling. The FDCPA is silent, whereas the FCRA was amended to not be silent. But I thought the point of the quote was that they're saying in TRW that it would appear that it's plainly established that there would be a prohibition against the discovery rule as it relates to the FDCPA. That quote, Your Honor, I don't exactly remember, but I would suggest that any reference to the FDCPA in an FCRA statutory textual interpretation would likely be dicta. Do we even need a TRW in Cunningham to tell us that the language of violation occurred reflects congressional intent to import an occurrence rule and to rule out a discovery rule? How much clearer could Congress be if it intended to adopt an occurrence rule than to say, use the language of violation occurs? Your Honor, the violation occurs is language. And, for example, in the TRW case, it did talk about medical malpractice and other state law causes of action. Occurrence is a very common word in some state law causes of action. Legal malpractice, for example, it's the discovery of the occurrence. I don't believe Congress, and I believe we're here because it's ambiguous. That's not what the Supreme Court said in McMahon, though, right? In McMahon, and this might be part of our difficulty in trying to sort through this, gets back to what we heard about accrual versus occurrence. But in McMahon, which came after Urey, which was an accrual case, right, in McMahon, the court said that the statute of limitations triggered on the date cause of action arises incorporates the injury occurrence rule. So if cause of action arises incorporates the injury occurrence rule, how can you contend that when the violation occurs, does not incorporate the injury occurrence rule? Even if it would incorporate, even if accrual, for example, and occurrence and violation arises were all the same, that does not prohibit tolling. Equitable tolling, I think everyone agrees with that. Unfortunately, that's not on the table, right? It's not on the, well, having drafted the underlying complaint, or co-drafted it, actually, the equitable tolling, it's my understanding of this circuit's jurisprudence that a fraud can be committed, and that doesn't necessarily mean that there's equitable tolling. There has to be causative thereafter concealment. I'm not sure what you mean by that, Mr. Weisberg. Are you saying equitable tolling is or is not an issue in this appeal? I agree with your honor that it's not an issue. It's not an issue. Yes. Right. So when you say tolling, I think that helps the next plaintiff, but it doesn't necessarily help this plaintiff. What helps this plaintiff is if he can establish the discovery rule. And what I'm probing you on is what do we do with the statement in McMahon that if cause of action arises incorporates the injury occurrence rule, how can we not conclude that the language here, violation occurs, also incorporates the injury occurrence rule? To the extent Judge Bevis, for example, brought up the Padovnik post-TRW case and the O'Shiver pre-TRW cases, and it has otherwise been brought up in the Graham cases, as potentially being third circuit inapplicable, I think that was Judge Bevis' point. The Magnum case is directly on point. Well, you're a winner if we follow Magnum, right? I mean, that's the foul. Right. That may be your best argument. Yes. You've got the Ninth Circuit and the Fourth Circuit going one way, and you want us to follow suit. Yes. But you need to engage the Magnum concurrence, right? That's what I asked your colleague about when she was up here on the opening. Judge O'Scanlan's point is that the majority didn't engage the language. It looked at structure and purpose, but it didn't come to grips with the language of violation occurs. It takes its colleagues to task for that. So here we are. We've got his remarks and we've got the majority's remarks in Magnum, and we've also got a concurrence in TRW where Justice Scalia forcefully makes the point that the Bay Area laundry case sets out a rule, and that's the background rule against which Congress legislates. And so with those things in place, how do you engage with the violation occurs language, which according to Judge O'Scanlan and some other folks is pretty dang clear language. Congress says what it means. It means what it says. You've got to take them at their word. It doesn't matter whether you like it or not. I can assume that the Magnum, I respectfully can't, presumptively can assume that the Magnum court and the TRW court that understood the concurrences and disregarded them towards the majority. For example, Justice Scalia's, the fine wine concurrence was not the majority opinion. Justice O'Scanlan's concurrence was not the majority opinion. And I believe in the Magnum court it did go through to even find that the jurisdictional heading was a codifier or a law revisionist insertion and not part of the statutory text. I don't believe the court needs to engage the concurrences. We can ignore those. I respectfully suggest that they're concurrences. Counselor? Yes. Magnum actually relied on pre-TRW circuit precedent. The majority didn't contain any independent analysis. It's only the concurrence that did. We can pause before we create a circuit split, but why doesn't the lack of reasoning on that side of the split overcome that presumption? To the extent that this court finds that Magnum is not precedential or was grounded on lack of foundation, for example, we talk about the Land Back opinion as well, but even notwithstanding those opinions, the fact that in Stevens it talks about a clear congressional intent and TRW talks about the FCRA's embedded statute of limitations, in fact the amended-to-be-embedded statute of limitations, that would indicate in TRW that the FCRA's embedded statute of limitations is clear congressional intent, whereas that does not exist here in the FDCPA if we're going to take a strictly textual approach as to this language, that the omission of the clear congressional intent, the overriding federal jurisprudence of the presumption of the discovery rule, and the overriding remedial nature of the FDCPA, would respectfully suggest and caution this court to adopt the discovery rule. Are you saying there's a vitality to the presumption of the discovery rule even post-Cabelli and TRW? Yes, Your Honor. I believe that the United States Supreme Court did not decide that, whether there is or there isn't. I would suggest that the circuits have, however. There's still an issue as to how expressed does the language of Congress have to be to rebut that presumption. It sounds to me like there's no language which could ever be sufficient in your submission to rebut the presumption, because you would get very expressed language, and it's not enough to rebut the presumption. Well, as it says, the discovery rule does not apply. That's what you're looking for. Well, then let's start from the text of that. I'm after? Respectfully, sir. There's a serious question, Judge McKee, raised, and I think your colleague answered it, and you take the same view. Your point is that for the text to be explicit, it must say the discovery rule does not apply to the statute. Your Honor, I hear that point. I respectfully suggest that Congress probably would not say that language. But in the TRW case, with the textual analysis, it talks about the embedded statute of limitations. That's how Congress can do it. All right. By embedding the statute. Thank you very much, Mr. Boyd. Thank you, Your Honors. Thank you all to both Judge Greenway. Here we are. Well, perhaps it will start. In any event, thank you all for your very helpful arguments. The involved court will take this case under advisement. We have another matter.